UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LESTER NAPIER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6 :06-368-DCR |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LAUREL COUNTY, KENTUCKY, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Lester Napier's ("Napier") motion for class certification. Napier asserts that a class of plaintiffs should be certified under Federal Rule 23(b)(2) for injunctive and declaratory relief and under Rule 23(b)(1) and (3) for recovery of actual or punitive damages.  The classes Napier seeks to represent are: (a) an "overcrowding" class composed of all person who have been or will be confined at the Laurel County Detention Center ("LCDC") on or after August 16, 2005, and (b) a "MRSA" class composed of all persons who first exhibited symptoms of methicillin-resistant staphylococcus aureus after being incarcerated at least ten days at the jail on or after August 16, 2005.

A hearing was held on the Plaintiff's motion on February 4, 2008.  After reviewing the record, the parties' arguments, and relevant authorities, the Court concludes that Napier has not stated classes proper for certification and cannot meet the requirements of Rule 23.  Therefore, he has failed to meet his burden and his motion for class certification will be denied.

## I.      BACKGROUND

This action was filed on August 16, 2006, by Napier, a former inmate of the LCDC. Napier was confined at the LCDC from August 22, 2005, until he was transferred to a medical facility for treatment related to MRSA in January 2006.  In his Amended Complaint, Napier alleges that, due to overcrowding in the LCDC and the Defendants' failure to adopt and follow appropriate procedures, he was denied lawfully-prescribed heart medication for several days and was exposed to MRSA.  Additionally, Napier claims that after he was infected with MRSA, he did not receive proper treatment and eventually developed a gangrenous infection of his scrotum that necessitated an emergency scrotectomy in January 2006.

The main allegation of Napier's amended complaint is that Laurel County violated  his constitutional rights (and those of others similarly situated) by detaining him in overcrowded cells, failing to distribute lawfully-prescribed medications, and failing to adequately remedy the inmates' exposure to MRSA.  Napier specifically asserts claims under 42 U.S.C. § 1983 and Kentucky law for constitutional and statutory violations.  The particular classes that Napier seeks to represent are as follows:

> (a) an "overcrowding" class composed of all persons who, since August 16, 2005, have been, are or will be confined at the Laurel County Detention Center ("the Jail") and
>
> (b) a "MRSA" class composed of all persons who, since August 16, 2005, first exhibited symptoms of methicillin-resistant staphylococcus aureus after being incarcerated at least ten (10) days at the Jail.

[*See* Record No. 41, p.10]

-2-

In connection with his motion for class certification, Napier has submitted numerous exhibits and made factual allegations regarding the alleged "overcrowding" and "MRSA" at the LCDC.   In particular, he relies on several Inspection Reports from the Department of Corrections, dating from Feburary 27, 2002, through June 12, 2006 [*Id.*, Att. 3-10, 12-24]; depositions of supervisory officials at the LCDC, including Betty McKnight and Jack Sizemore [*Id.*, Att. 25, 28-30]; protocols, policies, and reports on the management of MRSA from the Kentucky Department of Corrections and Federal Bureau of Prisons [*Id.*, Att. 35-39, 48]; his own medical reports [*Id.*, Att. 2, 50]; form declarations from approximately 10 inmates who claim to have been exposed to overcrowding and MRSA at the LCDC [*Id.*, Att. 26, filed under seal]; medical reports relating to certain inmates from the LCDC who exhibited alleged signs of MRSA [*Id.*, Att. 51-56] and; numerous newspaper and magazine articles discussing MRSA [*Id.*, Att. 40-47].   In addition to these materials, the Plaintiff has submitted several letters in connection with this litigation and in connection with the Laurel County officials' attempts to remedy and alleviate problems at the LCDC. [*Id.*, Att. 11, 31-33]  Finally, the Plaintiff directs the Court's attention to one unpublished decision from the Eastern District of Pennsylvania in which that court granted class certification based on allegations of cruel and unusual punishment under the Eighth and Fourteenth Amendments, including allegations of MRSA. *See  Inmates of the Bucks County Correctional Facility v. Bucks County*, 2004 U.S. Dist. LEXIS 30547 (Dec. 20, 2004 E.D. Pa.).

In summary, Napier makes several allegations concerning the requested classes and the conditions at the LCDC.  With regard to the claimed "overcrowding," Napier asserts that LCDC

was originally built to house only 229 inmates, but has exceeded its capacity by as much as 157 percent since it was first cited for overcrowding in the Inspection Report dated February 27, 2002.   The records show that over 40 inmates were found sleeping on the floor on more than one occasion in 2003, and, in 2004, the state inspectors began to cite the LCDC for lack of cleanliness.   Then, in June 2005, the jail reached a daily average of 414 people, while it was still only designed to hold 229 inmates.   Additionally, in December 2005, the jail still reported a daily average of 365 inmates, with as many as 420 inmates confined on a single date.   At that point, the Plaintiff alleges that the jail petitioned to raise its permitted capacity to 267 inmates, but only based on a reduced square footage pre inmate – not an increase in the jail's size.   According to Napier, LCDC sought to reduce the per inmate square foot allotment from 50 feet to 40 feet to allow the increased capacity.   By June 2006, the LCDC's average nightly population dropped to 325, but still reached as many as 361 inmates on a given occasion.

Napier also directs the Court's attention to the complaints and allegations of numerous inmates who claim to have witnessed and to have been exposed to overcrowding and MRSA at the LCDC.   For example, Inmate 69 states that he was placed in an overcrowded cell, did not have MRSA when he entered the jail, and was eventually hospitalized due to his exposure to MRSA at the LCDC.   Similarly, Inmate 18 claims that she was placed in a cell with only five beds and at least thirteen other inmates, requiring her to sleep on an "unsanitary floor with many others." [Record No. 41, p. 14] She claims to have developed MRSA as a result of her incarceration in these conditions at the LCDC.   Inmate No. 8 also claims that he was forced to sleep on the floor in a cell with only eight beds and twenty-two inmates, and that he developed

knots around his armpits from the unsanitary conditions.  Inmates 7, 12, 57, 38, and 15 all make similar claims concerning the overcrowding, the lack of any MRSA symptoms prior to entering the LCDC, and the development of MRSA symptoms more than ten days after entering the jail.

With respect to the proposed MRSA class, Napier alleges that MRSA is "an antibiotic-resistant bacterium that flourishes in skin and mucus membranes." [Record No. 41, p. 19]  The infection can be chronic, fatal, and is highly infectious.  [*Id*.]  The Plaintiff cites numerous articles and health reports concerning the recent epidemic of MRSA in jails, hospitals, schools and other public facilities.  Symptoms of MRSA are commonly characterized by the person infected and mis-diagnosed as having infected pimples, insect bites, spider bites, sores and boils.

Napier further alleges that the LCDC and its Jailer, Jack Sizemore, received a memorandum in 2004 detailing the symptoms and effects of MRSA and indicating what steps should be taken to attempt to alleviate the spreading of the infection in the jail.  This document, entitled the "Health Care Services Protocol" contains recommendations concerning maintaining sanitary conditions, including frequent hand washing, general sanitation, and avoiding contact with infected individuals.  However, Napier asserts that the LCDC never implemented these protocols.  Jack Sizemore testified at his deposition that he did not recall directing that these procedures be implements or discussing them with the LCDC medical department staff.  Napier claims that, as a result of the failure to follow these directives, take corrective action, and inform the inmates of the contagious nature of MRSA, numerous inmates have been exposed to the infection.  The LCDC identified 38 inmates who demonstrated MRSA-like symptoms while housed in the jail between January 2005 and June 2007.

At the hearing on the Plaintiff's motion for class certification, Napier's counsel argued that class certification should be granted to allow supervision and control by the Court, facilitate negotiation, mediation, and settlement, and give the LCDC priority in receiving help from the state. Through his attorneys, Napier clarified that he was seeking certification of two separate classes and that the proposed class involving overcrowding was not accompanied by any additional allegations of inhuman conditions. Further, with regard to the MRSA class, Napier's counsel stated that Napier only intended to represent those inmates who exhibited signs of MRSA more than ten days after entering the jail, due to the incubation period. However, Napier was only able to identify two people exposed to MRSA at the LCDC who were not in dispute regarding whether they contracted the infection before entering the jail and whether they actually had MRSA rather than just an infection, boil, or insect bite.[1]

In response, the Defendants assert that the Plaintiffs' proposed class definitions do not contain readily identifiable classes and would require *extensive* inquiry to determine whether each alleged individual is a member of the putative class. More specifically, the Defendants assert that the conditions at the LCDC are improving and that there are numerous factual disputes concerning the inmates who allegedly contracted MRSA at the jail. Regarding alleged overcrowding, the Defendants contend that, as evidenced by the Inspection Reports and the allegations in Napier's motion, the conditions at the jail have been and continue to improve "dramatically." In support, they point to the fact that the average, daily population of 414 as of

---

[1]      It appears that the only person identified in addition to the Plaintiff is Mr. Cunnagin, one of the putative class representatives in another case that is currently pending before United States District Judge Karen Caldwell, Case No. 6: 07-258. The Court previously denied the Plaintiff's motion to consolidate these two cases on the grounds of judicial economy and complication of the issues. [*See* Record No. 38]

June 30, 2005, declined to 365 by December 31, 2005. This number was further reduced to 325 by June 2006, and to 317 by 2007. In 2007, the number of permanent beds available to inmates was 310, and thus the average daily population only exceeded the number of beds by an average of seven inmates, which is greatly reduced from the 2005 statistics.

The Defendant further contends that the LCDC officials, such as Jailer Jack Sizemore and Nurse Betty McKnight, have actively pursued improving the conditions at the jail, and that their efforts have resulted in the decreased numbers. For example, Sizemore, McKnight, and Deputy Jailer Frank Gibson all appeared before the fiscal court at different times in 2004, 2005, 2006, and 2007 to discuss issues of expansion and overcrowding. Budgeting and possible land purchases have been discussed extensively and are still pending before the fiscal court. According to the Defendants, "[t]his is hardly the picture of a county which shows no interest in corrective action, and certainly not the picture of a county which needs the involvement of the federal court, because it is clearly attempting and is dealing with the issue of overcrowding, first by significantly reducing the annual average daily population count, and second, by pursuing long term strategies in anticipation of continued increase in incarceration need." [Record No. 53, p. 8-9]

Next, the Defendants contend that the putative MRSA class is improper for class certification because of distinct, factual issues regarding each proposed class member. The Defendants assert that, to date, the Plaintiff's proposed MRSA class is "zero." [Record No. 53, p. 23] According to the Defendants, the testimony of Inmates 69, 18, 8, 7, 12, 57, 38, and 15 (all of the specific inmates cited in the Plaintiff's motion) is contradicted by the medical evidence

in record.  For example, the Defendant alleges that Inmate 69 – who claims to have come to LCDC without MRSA – was treated for an infection related to his tattoo at his previous facility. Further, after he was examined by the nurse at the LCDC, he received treatment and follow-up care for the infection.

Regarding Inmate 18, the Defendants note that this individual complained of a boil on her buttocks only 6 days after being admitted to the LCDC, and thus would not fall into the Plaintiff's proposed class. Further, Inmates 7 and 38 were never jailed for more than ten days, and Inmate 7 was released on the same day as his incarceration.

The Defendants also note that, contrary to Napier's allegations, the policies and procedures of the state and federal authorities were implemented in the most practical manner possible.  And they contend that Napier's construction of the facts is "misleading" at best. Although Jailer Jack Sizemore may not have recalled the procedures, Nurse McKnight testified that she took them to the LCDC's treating physician, Dr. Rastogi, on the date she received them. According to the Defendants, Dr. Rastogi immediately incorporated the polices and continues to use them.  Nurse McKnight also stated that she reports MRSA infections to the Department of Corrections and takes appropriate sanitation measures.

In short, the Defendants contend that the Court need not reach the proposed classes under Rule 23, as "[t]he in-depth individual inquiries into the facts and circumstances of the claims of each potential class member necessary to establish membership and ultimately damages in the present case would create an administrative nightmare which far outweighs the economies of class litigation." [Record No. 53, p.18]  According to the Defendants,

[t]his case is not and will not be appropriate for class treatment. It does not contain a readily-identifiable class, the putative class definitions identify distinct questions of fact that would need to be answered by every named plaintiff and putative class member prior to ascertaining whether such individual is even a member of the class, and the merits of each putative class member's claim are so intermingled with proper consideration of issues germane to certification that class certification in improper.

[*Id.*, p. 13] Additionally, the Defendants note that the particular status of each proposed class member (*i.e.*, whether they are currently incarcerated, on release, and whether each defendant has pursued administrative remedies), defeats the typicality requirement of Rule 23(a). Finally, the Defendants assert that the Plaintiffs cannot meet the numerosity, commonality, or adequacy of representation requirements of Rule 23(a) or any of the requirements under Rule 23(b).

## II.   LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for maintaining a class action. For the Court to certify a class, the Plaintiffs proposed class must satisfy all four of the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. If each of these four prerequisites is established, then the Plaintiffs must show that the class may be maintained under one of the theories available under Rule 23(b).

A party seeking to certify a class bears the burden of establishing that certification is proper. *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). A class action may not be approved simply "by virtue of its designation as such in the pleadings." *Id.* Nor may prospective class representatives simply rely upon "mere repetition of the language of Rule 23(a)" to support their motion. *Id.* Instead, an adequate basis for *each* prerequisite must be pled

and supported by the facts. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). Additionally, the court must engage in a "rigorous analysis" to determine whether the prerequisites of Rule 23 are satisfied. *American Medical*, 75 F.3d at 1078-79 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

"Before engaging in the 'rigorous analysis' required by Rule 23, the Court must first consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *See Chaz Concrete Co., LLC v. Codell*, 2006 WL 2453302 (E.D. Ky. August 23, 2006) (citing *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004)). Although Rule 23 does not explicitly identify these requirements, one necessary element is that there must be a "class." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1760 (3rd ed. 2006). Important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner. *Id.*

While the identities of the class members do no need to be specified for certification, the proposed class must be sufficiently definite to demonstrate that a class actually exists. "The class definition identifies the persons who are entitled to relief, bound by final judgment, and entitled to notice under Rule 23(b)(3)." *Id.* (citing *Rodriguez v. Gates*, 2002 WL 1162675, at *9 (C.D. Cal. May 30, 2002)). Where extensive factual inquires are required to determine whether individuals are members of a proposed class, class certification is most likely improper. *Snow v. Atofina Chemicals, Inc.*, 2006 WL 1008002, at *8-9 (E.D. Mich. March 31, 2006).

Moreover, "[a] proposed class my be deemed overly broad if it 'would include members who have not suffered harm at the hands of the Defendant and are not at risk to suffer such harm.'" *Chaz*, at \*6 (citing *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001)).

### III.   ANALYSIS

#### A.  Defining the Proposed Class

Here, Napier seeks to identify two classes: (1) an "overcrowding" class composed of all persons who have been are, or will be confined at LCDC since August 16, 2005, and (2) a "MRSA" class composed of all persons who first exhibited symptoms of MRSA after being incarcerated at least ten days at the jail since August 16, 2005.  The main case cited in support of the Plaintiff's motion for certification is *Inmates of the Bucks County Correctional Facility v. Bucks County*, 2004 U.S. Dist. LEXIS 30547 (Dec. 20, 2004 E.D. Pa.).

In *Bucks County*, the district court granted class certification to representatives of the inmates of Bucks County Correctional Facility in connection with allegations of cruel and unusual punishment resulting from the "physical conditions, inappropriate sanitation, and denial of necessary medical treatment" at the facility.  *Id*. at \*12.  After considering the plaintiffs' allegations and the defendants' objections to all four requirements for class certification, the court summarily granted the motion.  Although that court considered each element, it offered little analysis and did not consider whether a "precisely defined class" existed or whether it would be possible to determine the extent of membership in any objective manner.  *See id.* at \*3-17.

This Court is not persuaded by the analysis and conclusion regarding class certification in the *Bucks County* case. Unlike the summary analysis presented by that court, this Court believes that it is required to engage in a "rigorous analysis" of the requirements of Rule 23 and its prerequisites as dictated by decisions of the United States Court of Appeals for the Sixth Circuit. *American Medical*, 75 F.3d at 1078-79 (citing *General Tel. Co.*, 457 U.S. at 161). Notably, a class should not be certified where extensive factual inquires are required to determine whether individuals are members of a proposed class, and where a plaintiff could prove his own claim, but, in doing so, "not necessarily have proved anybody else's claim." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citing *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998));  *Snow v. Atofina Chemicals, Inc.*, 2006 WL 1008002, at *8-9 (E.D. Mich. March 31, 2006).

In the present case, numerous factual disputes concerning the proposed class members and the overbroad class definitions would result in subjective mini-trials of each putative class member and thus make certification improper.  As the "facts" outlined above demonstrate, the proposed class definitions fail to provide specificity and an objective manner of determining the members of the proposed class.  Although inmates may allege that they were subjected to overcrowding and MRSA, each inmate's time of incarceration and symptoms would have to be evaluated independently.  For example, how could the Court objectively determine whether Inmate 7 was subjected to overcrowding or MRSA, when he was released from the jail on the same day as his admission?  This Court whole-heartedly agrees with the Defendants' assertion

-12-

that, other than the putative class representative, Napier has failed to identify a *single* member who would fit the proposed class definitions at this point in the litigation.[2]

Napier has also failed to establish that an "overcrowding class" should be certified by the Court. The Supreme Court has held that overcrowding in a prison setting is not itself a violation of the constitution. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *see also Owens v. Campbell*, 198 F.3d 246 (6th Cir. 1999). While overcrowded conditions can be restrictive and even harsh, such conditions do not necessarily violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *See Rhodes*, 452 U.S. at 348; *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). To allege a constitutional violation, each class member must allege and present evidence that he was denied basic human needs such as food, warmth, or sanitation, or was otherwise subjected to cruel and unusual punishment by virtue of the alleged overcrowded conditions to justify monetary relief. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes*, 452 U.S. at 348. Moreover, "[n]ot every unpleasant experience

---

[2]      The Court again notes that, other than Mr. Cunnigan, the Plaintiff has not identified another proposed member who allegedly fits the class definition. However, Mr. Cunnagin is presently litigating his claims in another action pending before Judge Caldwell.

The Court also notes that, since the time of the hearing on the motion for class certification, the Plaintiff has filed numerous motions to supplement with the names and declarations of other inmates who allegedly were exposed to overcrowding and/or MRSA at the LCDC. [*See* Record Nos. 70, 71, 72, and 73] The Plaintiff filed the attachments containing the names of these alleged inmates in the public record, in violation of the Court's previous order which was entered at the Plaintiff's request. [*See* Record No. 25] The appropriate manner of submitting such documents would be to file a motion and submit the documents directly to the Clerk's office under seal. However, inasmuch as these motions require a ruling, they will be denied. The Court declines to consider these supplemental documents because the Defendants have not been afforded an opportunity to respond to the particular claims and because the Plaintiff was granted a *substantial* extension in preparing his motion for class certification. The Plaintiff was also afforded the opportunity to provide any relevant information at the hearing, but was unable to do so in response to the Court's direct question. Therefore, the motions will be denied and the attachments will be stricken to comply with the Court's previous privacy order.

a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. For example, "[s]hort term deprivations of toilet paper, towels, sheets, blankets, mattresses toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation." *Ramos v. Lamm*, 639 F.2d 559, 685.

The Plaintiff's purported "overcrowding" class includes all present inmates incarcerated within one year of the statute of limitations and all future inmates detained in the Laurel County Detention Center. The Plaintiff has not presented any evidence, however, that *all* of the putative class members of this class have suffered any specific harm other than overcrowding. In fact, at the hearing, the Plaintiff's attorney specifically stated that he was not alleging a class based on overcrowding and some other distinctive factor, such as the failure to provide medication alleged in the Complaint. Therefore, if the Court were to certify a class based on the Plaintiff's proposed class definition, it would be required to analyze the circumstances surrounding each Plaintiff's claim to determine if the potential class member was subjected to unconstitutional overcrowding conditions. In other words, this Court would have to determine: (1) whether each class member was actually in a cell that was overcrowded; and (2) whether each class member was subjected to deprivations of essential food, medical care, or sanitation or other intolerable conditions as a result of the overcrowding. *See e.g., Rhodes*, 452 U.S. at 348.

Similarly, the Plaintiff's "MRSA" class consists of all person who, since August 15, 2005, have exhibited signs of MRSA after being detained in the LCDC for at least ten days. However, the Defendants point out that most of the inmates who are alleged as members of this class do not even meet the proposed class specifications, as many exhibited signs of MRSA

immediately upon their intake at LCDC.  [*See* Record No. 53, pp. 3-7, 16-18.]  Regardless of the

parties' assertions regarding the truth of the allegations, it is clear that the Defendants are correct

in their argument that each member of the class would need to be subject to extensive inquiry

to determine whether he or she fits within the proposed class.

The difficulties inherent in identifying membership in the Plaintiff's proposed classes

present serious administrative burdens that are inconsistent with the efficiencies expected in a

class action.  Many of the benefits that are the hallmark of a proper class action would be lost

if this Court were required to make individual factual inquires in order to determine the members

of the proposed class.  *See Sanneman v. Chrysler Corp.*, 191 F.R.D. 441 (E.D. Pa. 2000)

(certification denied where determining class membership "would essentially require a mini-

hearing on the merits" of each proposed class member's case); *Luedke v. Delta Airlines*, 155

B.R. 327, 332 (S.D.N.Y. 1993) (certification denied because it would require "an unmanageable

number of individualized, somewhat subjective determinations of the validity" of the potential

claims).

Where, as here, a named plaintiff fails to define the class adequately, the court need not

proceed with a full Rule 23 analysis.  *See Edwards v. McCormick*, 196 F.R.D. 487 (S.D. Ohio

2000).   The Plaintiffs' failure to establish an adequately-defined class alone is a basis on which

this Court may deny certification.  Nevertheless, the Court will proceed to examine application

of Rule 23(a) to determine if there is any merit to Napier's class allegations.

### B.    Rule 23(a) Requirements

Rule 23(a) outlines the prerequisites for certifying a class action.  Specifically, the rule provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Each of these elements will be examined in turn.

### 1.      Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This is often referred to as the numerosity requirement.  7A Charles Alan Wright & Arthus R. Miller, Federal Practice and Procedure §1762 (3d. ed. 2006).  A proposed class meets the numerosity requirement by demonstrating the impracticality, not the impossibility, of joinder.  *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 660 (E.D. Mich. 1995).  "Impracticability" depends upon all the circumstances of the case.  *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970).  No specific minimum number of alleged class members is necessary.  Instead, the appropriate inquiry is whether the plaintiff has sufficiently demonstrated the existence of the numbers of persons he purports to represent.  *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666 (E.D. Ky. 1974); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989).  In making this determination, the Court may consider "reasonable inferences drawn from facts before it."  *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976), *cert. denied*, 429 U.S. 870 (1976).  In reviewing this issue, the Court cannot rely on speculation or conclusory allegations of the proposed representatives.  Instead,

the Plaintiffs must "show some evidence of or reasonably estimate the number of class members." *Schwartz v. Upper Deck* Co., 183 F.R.D. 672 (S.D. Ca. 1999); *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 781 (E.D. Mich. 1971) ("Speculation cannot be used to establish that a prospective class is so numerous as to make joinder impracticable.")

Here, Napier has failed to meet his burden of demonstrating the number of persons he seeks to represent. All the inmates cited in his motion for certification are disputed members of the proposed class, and Napier was unable to identify any relevant members at the hearing on the motion other himself. As previously discussed, one of the problems with the classes as defined by Napier is that they require the Court to make individual factual inquiries to determine the members of the proposed class.

In attempting to meet the numerosity requirement, Napier states in his brief that the LCDC has held as many as 325 inmates and that the Defendants have provided information concerning 38 inmates who reported MRSA-like symptoms. However, with respect to the overcrowding class, the numerosity requirement has not been met because Napier has failed to alleged anything in addition to overcrowding, which, by itself, is not a constitutional violation. *See Rhodes*, 452 U.S. at 348; *Ivey*, 832 F.2d at 954. Conversely, a plaintiff must provide evidence of the number of inmates that have been denied basic necessities, such as food, warmth and sanitation. And because Napier has failed to do so, the Court would be forced to engage in an individual, subjective analysis of each putative plaintiff to determine whether he or she is entitled to relief.

Similarly, Napier's allegations concerning the 38 inmates who allegedly reported MRSA-like symptoms are insufficient to satisfy the numerosity requirement.  First, the reported persons do not fit the definition of the Plaintiff's proposed class, which seeks to certify all those who first exhibited symptoms of MRSA after being incarcerated at least *ten days* at the jail.  Second, the exhibition of MRSA-like symptoms does not necessarily mean that the person had MRSA.  The Court has already noted that it agrees with the Defendants' assertion that the Plaintiff has failed to identify a single member who would actually fall into this category, and it is clear that the Court would have to consider each individual claimant before certifying them as a class member. As the Court noted in *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 781 (E.D. Mich. 1971), "[s]peculation cannot be used to establish that a prospective class is so numerous as to make joinder impracticable."  For these reasons, the Court finds that Napier has failed to meet the numerosity requirement with regard to the proposed classes.

### 2.      Commonality

Rule 23(a)(2) provides that, in order for a class to be certified, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This is because, where there are common questions of law or fact, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (citation omitted).

The Sixth Circuit has held that in order to satisfy the commonality requirement "there need only be a single issue common to all members of the class." *American Medical*, 75 F.3d at

1080.  However, the existence of *any* common question is insufficient because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What is necessary is a common issue the resolution of which will advance the litigation." *Sprague v. General Motors*, 133 F.3d 388, 397 (6th Cir. 1998).

Napier alleges that the commonality requirement is satisfied here because there are several common questions raised by his claims.  More specifically, he contends that the following common questions exist: (a) whether the Jail is so chronically overcrowded as to violate inmates' constitutional rights; (b) whether the Jail failed to properly screen, isolate, educate, or treat its inmates in violation of the very policies the Jail had adopted to protect inmates from MRSA; (c) whether the MRSA problem at the Jail was caused or contributed to by overcrowding, understaffing, underfunding, or a lack of training, education or supervision of the Jail's employees; (d) whether injunctive relief is necessary to protect current and future inmates at the Jail, and the Laurel County community; and (e) whether the Defendants are liable for the actual damages sustained by inmates as a consequence of overcrowding and infection. [Record No. 41, p. 43-44]

However, this Court believes that Napier's claims of "commonality" highlight the insurmountable problems with the proposed class definitions. First, as noted previously, an allegation of overcrowding, by itself, does not necessarily constitute a constitutional violation and the Plaintiff has failed to allege any inhuman treatment in connection with overcrowding class that would otherwise warrant relief.  Second, the alleged common questions of "violations of policies" and administrative failures on the part of the LCDC are in sharp dispute and require

-19-

subjective analysis to determined whether a putative class member was exposed to such treatment and conditions.  Further, the common question of "actual damages" appears to be the most absurd assertion, as each proposed class member's alleged damages would vary greatly. The proposed class representative, Lester Napier, is most demonstrative of this fact, as his alleged case of MRSA is, by far, the most egregious claim presented and, if proven, could require a substantial variance in actual damages from that of the other proposed members.

It is also notable that the proposed class does not further the purpose of the commonality requirement in providing a means for saving resources for both Court and the parties and in resolving issues in an economical fashion.  *See American Medical Sys. Inc.*, 75 F.3d at 1080. The Defendants assert that *American Medical Systems*, 75 F.33 at 1080-82, is highly instructive on this point.  In that case, the Court found that a class of plaintiffs seeking damages in connection with penile prosthetic devices could not establish a class because they did not all use the same model, and the injuries were different with each plaintiff.  Here, Napier will be unable to establish a single set of facts that establish liability on the part of the Defendants or a single proximate cause of the proposed plaintiffs' injuries.  Rather, individual examination and determination would be required in connection with the actual conditions of confinement faced by each proposed class member, the medical treatment received, and whether those conditions constitute cruel and unusual punishment.  And if claims are proven, the different circumstances of each prospective plaintiff might warrant different damages or different outcomes. Accordingly, the Court finds that Napier has failed to meet the commonality requirement of Rule 23(b).

### 3.        Typicality

Subsection (a)(3) of Rule 23 requires that the claims of the representatives be typical of

the claims of the class.  Fed. R. Civ. Pro. 23(a)(3); 7A Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1764 (3d. ed. 2006).  In conducting this analysis, the Court

must determine "whether a sufficient relationship exists between the injury to the named plaintiff

and the conduct affecting the class, so that the court may properly attribute a collective nature

to the challenged conduct."  Newberg and Conte, § 3.13, at 3-75, 76.  "The premise of the

typicality requirement is simply stated:  as goes the claims of the named plaintiff, so go the

claims of the class." *Sprague*, 133 F.3d at 399.  The representatives' interests must be aligned

with those of the putative class and the pursuit of their claims must also advance the interest of

the class.  *American Medical*, 75 F.3d at 1082.

> The Sixth Circuit describes the purpose of the typicality requirement as follows:
>
> Typicality determines whether a sufficient relationship exists between the injury
> to the named plaintiff and the conduct affecting the class, so that the court may
> properly attribute a collective nature to the challenged conduct  .  .  .  Thus a
> plaintiff's claim is typical if it arises from the same event or practice or course of
> conduct that gives rise to the claims of other class members, and if his or her
> claims are based on the same legal theory.

*American Medical*, 75 F.3d at 1082.  Typicality is required so that the class representative may

"advance the interest of the entire class."  "Under the commonality prong, a court must ask

whether there are sufficient factual or legal questions in common among the class members'

claims to make class certification economical and otherwise appropriate.  In contrast, under the

typicality prong, a court must ask whether, despite the presence of common questions, each class

member's claim involves so many distinct factual or legal questions as to make class certification

inappropriate."  In other words, commonality focuses on similarities, while typicality focuses on differences.  *See Marquis v. Tecumseh Products Co.*, 206 F.R.D. 132, 158, 59 (E.D. Mich. 2002) (citing *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 597-98 (E.D. Mich. 1996).

In the present case, the typicality requirement fails for reasons similar to those discussed with respect to the commonality requirement.  That is, the near certainty that important factual difference will arise between various class members prevents this Court from concluding that Napier's claims are typical of those of the proposed class.  With regard to typicality, Napier is the only member of the putative class who has ever required medical treatment at a facility other than a local facility in connection with MRSA.  If his allegations are true, his case is admittedly extreme.  Additionally, the putative class is composed of past, present, and future inmates of LCDC, all of whom are subject to the exhaustion of administrative remedy requirements.  This analysis would require substantial inquiry into each defendant's situation alone.  However, typicality is also defeated by the range of alleged injuries and potential damages.  As the Sixth Circuit recently noted in *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007), "the typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody else's claim.'" *Id.* (citing *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998)).  Here, Napier has failed to identify a single member other than himself who would be entitled to relief under the proposed class definitions.  Thus, he has failed to satisfy that the typicality requirement has been met.

### 4.       Adequacy of Representation

Subsection (a)(4) permits a class to be maintained only if "the representative parties will fairly and adequately protect the interests of the class." The Sixth Circuit has adopted a two-part analysis in addressing this requirement. *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973). This test requires that the representatives: (1) have common interests with unnamed members of the class; and (2) will vigorously prosecute the interests of the class though qualified counsel. *See Senter*, 532 F.2d at 524-35; *see also Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026 (6th Cir. 1977) (The rule tests "whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent" and "the experience of the counsel for the plaintiffs.") Additionally, the second element requires that attorneys for the class must be qualified to conduct the proposed litigation." *See Cross*, 553 F.2d at 1031. These determinations are questions of fact and are dependent upon the circumstances of each case. Further, the party seeking certification has the burden of proof on these issues. *See* Wright and Miller, § 1765.

The first part of this requirement (*i.e.*, that the named plaintiffs have common interests with other unnamed plaintiffs) has been addressed in the previous section of this memorandum opinion. As discussed above, the Court concludes that Napier does not meet this requirement. And while the Court would normally engage in a thorough and exhaustive analysis of the second element, having already concluded that plaintiff does not qualify for class certification, the Court need not parse whether Plaintiff's counsel have sufficient experience.

-23-

## IV.    CONCLUSION

As discussed herein, Napier has failed to adequately define the proposed classes he seeks to represent.  In addition, he has not met his burden of establishing the inherent elements and the subsection (a) prerequisites of a class action under Rule 23 of the Federal Rules of Civil Procedure.  Given this failure, it is unnecessary to engage in an analysis under Rule 23(b).  Accordingly, for the reasons discussed herein, it is

**ORDERED** as follows:

1.       The Plaintiff's Motion to Certify Class [Record No. 41] is **DENIED**.

2.       The Plaintiff's Motions for Leave to File Supplemental Reference Lists and Declarations [Record No. 70, 71, 72, and 73] are **DENIED**.  The Clerk is **DIRECTED** to **STRIKE** the attached exhibits entitled "Inmate References Lists" from the record.  Plaintiff's counsel is also **DIRECTED** to ensure that all future motions and exhibits comply with the Court's Amended Scheduling Order regarding privacy.  (*See* Record No. 25.)

This 26th day of February, 2008.



Signed By:

*Danny C. Reeves*

United States District Judge