UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| LESTER NAPIER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.06-368-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| LAUREL COUNTY, | ) | **ORDER** |
| KENTUCKY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Lester Napier has sued Laurel County, Kentucky, and its Jailer, Jack Sizemore, because he allegedly contracted methicillin-resistant staphylococcus aureus ("MRSA") while incarcerated in the Laurel County Jail. Specifically, he asserts that the defendants are liable to him for: (1) violating his Eighth Amendment right to be free from cruel and unusual punishment by housing him in an unsanitary and overcrowded jail that forced him to be exposed to MRSA; (2) violating his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with proper medical care during his incarceration; (3) consciously, knowingly, and wilfully violating his rights under Kentucky law; (4) intentionally inflicting emotional distress upon him; and (5) causing him injury through their negligent and grossly negligent conduct. The plaintiff moved to have this case certified as a class action, but that motion was denied on February 26, 2008. R. 79. After the United States Court of Appeals for the Sixth Circuit declined to grant an interlocutory appeal of the class certification decision, R. 92, the defendants filed the currently pending motion for summary judgment, R. 108. The Court held oral argument on this motion on July

9, 2009, R. 132.

With respect to his state law claims, the plaintiff has conceded that the only viable theories of recovery are the negligence and gross negligence claims asserted against Defendant Sizemore in his individual capacity.  Therefore, at the oral argument, the Court granted summary judgment in favor of the defendants on all of the state law claims except the negligence and gross negligence claims against Defendant Sizemore in his individual capacity.  With respect to the plaintiff's Eighth Amendment claims, though, the Court preliminarily denied summary judgment and took under advisement the issue of whether those claims are barred by the administrative exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  With additional time to consider the issue, and having received both newly discovered evidence from the defendants and further briefing from the plaintiff, the Court concludes that the plaintiff's federal claims are barred by the PLRA exhaustion requirement.  Accordingly, the defendants are entitled to summary judgment on those claims.  Additionally, since there are no longer any federal claims remaining in this case, the Court declines to exercise supplemental jurisdiction over the remaining state claims.  Therefore, those claims will be dismissed without prejudice so that they may proceed in a more appropriate state forum.

## I. BACKGROUND

The plaintiff was incarcerated in the Laurel County Jail beginning in August of 2005.  During his incarceration, he developed a rash in his groin area, and on January 10, 2006, he complained to the jail staff about pain in his groin.  *See* R. 114, Sealed Ex. B-10.  After he complained to the jail staff about his pain, the plaintiff was transported on January 10 to the office of Dr. Rastogi, an

outside physician. *See* R. 114, Sealed Ex. B-11. Dr. Rastogi prescribed an antibiotic called cephalexin, and Napier was sent back to the jail. *See* R. 114, Sealed Ex. B-12. On January 12, the plaintiff complained that his scrotum was swollen and in pain. *See id.* The jail nurse inspected him and found that his scrotum was red and swollen to the size of a grapefruit. *See id.* To treat the condition, she gave him ibuprofen and an ice pack, and she continued to monitor his condition. *See id.* The next day, January 13, the plaintiff was taken back to Dr. Rastogi's office, and then was transported to Marymount Medical Center in London, Kentucky. *See* R. 114, Sealed Exs. B-13, B-14. After twelve hours at Marymount Medical Center, the plaintiff was transferred to the University of Kentucky Chandler Medical Center. *See* R. 114, Sealed Ex. B-14. At the University of Kentucky, the medical staff diagnosed the plaintiff as suffering from scrotal cellutitis with gangrene. *See id.* Bacterial cultures revealed that this condition was caused by MRSA. *See id.* To remedy the condition, the plaintiff was taken into surgery and underwent a scrotectomy. *See id.* Following this procedure, the plaintiff remained at the University of Kentucky Chandler Medical Center until January 20, when he was discharged and sent back to the Laurel County Jail. *See id.* The plaintiff remained in the Laurel County Jail for a few days after being released from the hospital, and then the jail sent him home and arranged for him to receive home healthcare. *See* R. 113, Ex. A, Napier Dep. 66:11-67:10.

During the plaintiff's incarceration in the Laurel County Jail, the jail maintained an administrative grievance process that was available to all inmates. *See* R. 113, Ex. D, Prince Aff. 1; R. 113, Ex. C, Inmate Grievance Procedure, 8-10. The grievance process allows inmates to seek administrative remedies when they believe that they have been subjected to "abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules." R. 113, Ex. C, Inmate

Grievance Procedure, 8. The grievance process provides that an inmate can initiate a grievance by submitting a written statement "promptly following the incident." *Id.* In this case, it is undisputed that the plaintiff has never made any attempt to file a grievance or otherwise conform with the grievance process in any way. *See* R. 113, Ex. D, Prince Aff. 1; R. 113, Ex. A, Napier Dep. at 56:11-20. However, during the plaintiff's incarceration at the Laurel County Jail, the jail also provided prisoners with a formal process through which they could request medical attention. *See* R. 134, Ex., Inmate Handbook Pages at 4:1. It is clear that the plaintiff used this process on many occasions. *See, e.g.,* R. 114, Sealed Ex. B-10. In fact, much of the medical treatment rendered to the plaintiff appears to have been given as a result of his formal requests for medical care.

After his release from the Laurel County Jail, the plaintiff was convicted under state law of being a felon in possession of a firearm in July of 2006. *See* R. 124, Ex. C, Gaines Aff., Ex. A. As a result, he was incarcerated again on July 24, 2006, albeit not in the Laurel County Jail. *See id.* When this lawsuit was filed on August 16, 2006, the plaintiff was an inmate at the Marion Adjustment Center in Marion County, Kentucky. *See id.*

## II. ANALYSIS

### 1.    The PLRA exhaustion requirement bars the plaintiff's federal claims.

Congress enacted the PLRA, 42 U.S.C. § 1997e *et seq.*, "in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Alexander v. Hawk*, 159 F.3d 1321, 1324-25 (11th Cir. 1998)). The PLRA seeks to alleviate this situation by requiring prisoners to exhaust their administrative remedies before filing a federal lawsuit. *See* 42 U.S.C. § 1997e(a). Specifically, the PLRA exhaustion requirement provides that prisoners

may not bring actions under federal law with respect to prison conditions "until such administrative remedies as are available are exhausted." *Id.* Requiring administrative exhaustion serves to reduce the quantity of prisoner lawsuits and promote efficiency because some prisoners will be able to resolve their claims more quickly and economically in the administrative process than in federal litigation, and still other prisoners will be persuaded by the administrative process that they should not pursue their grievances in federal court. *See Woodford*, 548 U.S. at 89 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *Parisi v. Davidson*, 405 U.S. 34, 37 (1972); *McKart v. United States*, 395 U.S. 185, 195 (1969)). It also serves to improve the quality of prisoner lawsuits by creating "an administrative record that is helpful to the court." *Id.* at 94-95. In other words, administrative exhaustion improves the quality of prisoner lawsuits because "[w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Id.* at 95.

In this case, there is no dispute that the plaintiff was a prisoner at the time he filed his lawsuit. Thus, by its plain terms, the PLRA exhaustion requirement applies to this lawsuit. *See Smith v. Franklin County*, 227 F. Supp. 2d 667, 675-76 (E.D. Ky. 2002) (holding that the PLRA exhaustion requirement only applies to individuals who are prisoners at the time they file suit); *see also Black v. Franklin County, Kentucky*, No. Civ.A. 3:05-18-JMH, 2005 WL 1993445, at *5 (E.D. Ky. Aug. 16, 2005) ("Nothing in the plain language of the PLRA exempts a prisoner who is detained on *different charges than those that yielded the imprisonment from which the claims arose* from the exhaustion requirements . . . ." (citing 42 U.S.C. §§ 1997e(a), (e), (h))). As a result, the only question facing the Court is whether the plaintiff adequately exhausted the administrative remedies made available to him by the Laurel County Jail. Ultimately, this question must be answered in the

negative because the undisputed evidence in the record shows that at the time he filed his complaint, there were administrative remedies available to him through the Laurel County Jail, and he had not exhausted them.

The plaintiff concedes that he never filed any grievances, but he asserts that this is immaterial. According to the plaintiff, the PLRA exhaustion requirement does not affect him because, by the time he filed his complaint, there were no longer any administrative remedies available to him through the Laurel County Jail due to the fact that he was incarcerated in a different institution. In other words, the plaintiff argues that the PLRA only requires the exhaustion of those administrative remedies that "*are* available" at the time a prisoner files a complaint, and since he was incarcerated in a different institution at the time he filed his complaint, the Laurel County administrative remedies were no longer available to him and therefore did not have to be exhausted. This argument has some logical compulsion, but the problem is that it is not supported by the evidence available in the record. To the contrary, the evidence indicates that the Laurel County administrative remedies were available to the plaintiff at the time he filed this lawsuit. Therefore, there is no excuse for his failure to exhaust them.

As an initial matter, the jail's grievance policy is admittedly vague. It provides that an inmate may "file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules," R. 113, Ex. C, Inmate Grievance Procedure, 8. The policy also provides that "[g]rievances must be restricted to incidents which occur while the prisoner is in custody of the facility." *Id.* However, it does not state whether a grievance can be pursued by an inmate who is no longer incarcerated at the Laurel County Jail. One could say that the policy suggests that the process is not intended to be used by

6

former inmates since it says that grievances "shall be made in the form of a written statement by the inmate promptly following the incident, sealed in an un-stamped envelope and addressed to the jailer or his designee . . . ." *Id.*  However, the fact remains that nothing in the policy explicitly prohibits inmates from filing grievances after they have been released from the Laurel County Jail.  Moreover, it is not impossible for such an individual to file a grievance in compliance with these procedures.  For example, the inmate could simply place his written statement inside an un-stamped envelope which is itself placed inside a stamped and addressed envelope.  Therefore, by its own terms, the grievance policy does not necessarily prohibit former Laurel County Jail inmates from pursuing the administrative remedies provided by the Laurel County Jail.

Most importantly, however, the defendants have submitted affirmative evidence showing that the Laurel County grievance process is in fact available to former inmates.  This evidence is in the form of a grievance that was submitted to the Laurel County Jail on July 16, 2009, by a former Laurel County inmate who is currently incarcerated at the Eastern Kentucky Correctional Complex in Morgan County, Kentucky.[1]  *See* R. 133.  As this evidence clearly demonstrates that the Laurel

---

[1]The plaintiff objects to the Court's consideration of this evidence since it was not submitted until one week after the oral argument on the summary judgment motion.  *See* R. 134. However, it is appropriate to consider this evidence since the defendants could not possibly have discovered it any earlier, and since they promptly brought the evidence to the Court's attention during the pendency of the summary judgment motion rather than waiting to file a motion to reconsider in the event that they did not prevail on the summary judgment motion.  *Cf. Helton v. ACS Group*, 964 F. Supp. 1175, 1182 (E.D. Tenn. 1997) ("Motions for reconsideration cannot be used to . . . present evidence that could have been adduced during the pendency of the original motion." (quoting *In re Oil Spill by the "Amoco Cadiz" off the Coast of France on March 16, 1978*, 794 F. Supp. 261, 267 (N.D. Ill. 1992))).  Moreover, the evidence is highly relevant to the question of whether the Laurel County Jail's administrative remedies remain available to former Laurel County inmates when they are incarcerated in other institutions.  Finally, the plaintiff has objected to the newly discovered evidence, but he has provided no coherent reason why it should not be considered.  He argues that the new evidence is untimely and irrelevant, however, it is clearly relevant, and it is difficult to see how the submission of this evidence could be viewed as

County grievance process is available to former inmates who are incarcerated elsewhere, the plaintiff cannot justifiably rely on his incarceration at the Marion Adjustment Center as an excuse for failing to file a grievance with the Laurel County Jail. The plaintiff has had every opportunity through discovery to develop that the Laurel County Jail's administrative remedies were not available to him at the time he filed this lawsuit, but he has not done so. Therefore, because the only evidence before the Court indicates that those administrative remedies were available to the plaintiff at the time he filed this lawsuit, the defendants have satisfied their burden of proving that the plaintiff failed to comply with the PLRA exhaustion requirement before bringing this action. *See Jones v. Bock*, 549 U.S. 199, 211-12 (2007) (holding that failure to exhaust is an affirmative defense under the PLRA).[2] As a result, the plaintiff's federal claims are barred by the PLRA exhaustion requirement.

It may be argued that there were technically no Laurel County administrative remedies available to the plaintiff since his incarceration in another institution meant that the Laurel County Jail could not have actually provided him with a remedy for any grievance that he might have made. As an initial matter, it is unclear whether this is the case. Nevertheless, it does not matter. The efficacy of an administrative remedy has no bearing on whether that remedy is "available" within the meaning

---

untimely when it could not possibly have been submitted any earlier. Therefore, the Court will consider this evidence in determining whether the PLRA exhaustion requirement bars the plaintiff's claims.

[2]In its simplest form, the issue is whether the administrative remedies were "available" to the plaintiff. The defendants have come forward with affirmative evidence that they were—the policy itself that does not preclude the filing of a grievance from another institution and the fact that at least one inmate of another institution has recently filed such a grievance. Even though the plaintiff took significant discovery in this matter it has not produced a single piece of evidence to the contrary. Thus, summary judgment is mandated. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").

of the PLRA.  It is well established that a prisoner must exhaust the available administrative remedies even when the relief sought cannot be granted by the administrative process.  *See Woodford*, 548 U.S. at 85 (citing *Booth v. Churner*, 532 U.S. 731, 734 (2001)).  As the Seventh Circuit has held, "there is  no futility exception to the PLRA's exhaustion requirement."  *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999) (citing *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999)).  In other words, "[t]he potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief though administrative procedures." *Massey*, 196 F.3d at 733.  Similarly, the Sixth Circuit has held that even when a prisoner seeks a remedy that is not available to him, he still must exhaust his prison remedies "so long as the prison system has an administrative process that will review [his] complaint." *Hartsfield v. Vidor*, 199 F.3d 305, 308 (6th Cir. 1999) (citing *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir.1999); *Lavista v. Beeler*, 195 F.3d 254, 256-58 (6th Cir.1999)).  Since the Laurel County Jail had an administrative process that would have reviewed a grievance from the plaintiff at the time he filed this lawsuit, the plaintiff's failure to use the administrative process means that he did not adequately exhaust the available administrative remedies.

Additionally, the plaintiff's failure to exhaust cannot be excused by his ignorance of the law. *See Castro v. Crawfoot*, 102 F. App'x 852, 853-54 (5th Cir. 2004) (per curiam) (citing *Fisher v. Johnson*, 174 F.3d 710, 712-14 (5th Cir. 1999)); *see also Molina-Crespo v. United States Merit Sys. Prot. Bd.*, 547 F.3d 651, 662 (6th Cir. 2008) (noting that "even in civil suits, 'ignorance of the law' does not excuse the failure to follow it" (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561-62 (6th Cir. 2000))).  The plain language of the PLRA makes no exception for ignorance of the law, and it is not this Court's place to create such an exception.

9

The plaintiff also cannot attempt to have his lack of administrative exhaustion excused on the basis that he was ignorant of the grievance process itself. It is true that courts have found that administrative remedies are not actually "available" to inmates if the inmates have never been made aware of the existence of those remedies. *See, e.g., Hall v. Sheahan*, No. 2000 C 1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001) ("A grievance procedure that is not made known to inmates is not an "available" administrative remedy." (citing *Johnson v. Garraghty*, 57 F. Supp. 2d 321 (E.D. Va. 1999))). However, even if the Court were to accept this rule, it would obviously not help the plaintiff in the instant case since it is undisputed that he was provided with a copy of the jail's grievance policy.

It is also true that some courts have held that a failure to exhaust can be excused where it is the result of a reasonable misunderstanding of the grievance process. *See, e.g., Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). But even if the Court were to accept this proposition as well, it would not help the plaintiff in this case because the evidence does not indicate that he misunderstood the grievance process. To the contrary, the plaintiff testified in his deposition that he failed to file a grievance because he "didn't want to bother the staff," R. 113, Ex. A, Napier Dep. 56:16-20, not because he misunderstood the grievance process. This is exactly what the PLRA aims to avoid though. Had the plaintiff simply "bothered" the jail staff with a grievance, they may have been able to remedy any problems, thereby avoiding inefficient litigation. The bottom line is that Congress chose not to allow federal suits in such situations, and it is not up to this Court to second-guess that policy.

Finally, the plaintiff argues in the alternative that he did in fact exhaust his administrative remedies by filing medical request forms with the jail staff. In this regard, the plaintiff relies on

*Rancher v. Franklin County*, 122 F. App'x 240 (6th Cir. 2005). In *Rancher*, the plaintiff alleged that she had been denied medical care for a broken arm while she was incarcerated in the Franklin County (Kentucky) Jail. *See id.* at 241. During her incarceration, the plaintiff filed medical request forms, but she never filed a grievance. *See id.* at 241. Because she never filed a grievance, the district court concluded that she had failed to exhaust the available administrative remedies in compliance with the PLRA. *See id.* The Sixth Circuit reversed. Although it noted that the plaintiff had not exhausted any administrative remedies before bringing an action in federal court, the Sixth Circuit concluded that this was not an impediment to her lawsuit since the jail staff had told her that she could not file grievances pertaining to medical issues and instead had to file medical request forms, which she did. *See id.* at 241-42. Thus, the Sixth Circuit held that there were no administrative remedies to exhaust with respect to medical care since the jail had "a flat rule . . . against allowing grievances for medical issues." *Id.* at 242 (citing *Wyatt*, 193 F.3d at 878). No such circumstances exist in this case. The evidence does not show that the jail prohibited the plaintiff from filing any grievances or told him that grievances were not available for medical requests or any particular issues for that matter. In addition, the grievance policy plainly says that inmates can file grievances whenever they believe that they have been subjected to "abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules." R. 113, Ex. C, Inmate Grievance Procedure, 8. This policy does not prevent inmates from filing grievances pertaining to the denial of medical care, and there is no other evidence indicating that the plaintiff was made to believe that he could not file such grievances. Therefore, the holding of *Rancher* has no application to this case.

Similarly, the plaintiff asserts that his failure to follow the formal grievance procedure should not be held against him because he had the choice of exhausting his administrative remedies through

verbal complaints and medical request forms in lieu of the formal grievance process. The evidence in the record simply does not support this contention. Nowhere in the grievance policy does it give inmates a choice among multiple administrative remedies, and the plaintiff himself has never indicated that he thought he could exhaust his administrative remedies with verbal complaints or medical request forms. Instead, the evidence indicates that he understood the grievance process, but simply decided not to utilize it because he did not want to bother the jail staff.

**2.      The Court will not exercise supplemental jurisdiction over the remaining state claims.**

Having concluded that the plaintiff's federal claims are barred by the PLRA, the Court must now determine what to do with the remaining state law claims. The supplemental jurisdiction statute gives this Court discretion to decline supplemental jurisdiction over the remaining state law claims since the Court has dismissed all of the claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). If the Court elects to exercise supplemental jurisdiction over the plaintiff's state law claims, Sixth Circuit precedent will compel it to find that those claims are also barred by the PLRA. In *Hartsfield*, the Sixth Circuit held that a failure to comply with the PLRA exhaustion requirement is fatal to state law claims that are before a federal court by virtue of diversity jurisdiction. *See Hartsfield*, 199 F.3d at 309. The Sixth Circuit reasoned that since "a claim brought pursuant to the federal diversity statute is 'by any definition' brought under a federal law," *id.* (quoting the district court opinion), the plain language of § 1997e(a) requires those claims to be administratively exhausted before they can be brought in federal court, *id.* By analogy, then, the state claims in this case would likewise be subject to the PLRA exhaustion requirement since, like claims brought in diversity, these claims are present in federal court via a federal statute—i.e., the supplemental jurisdiction statute. As a result, if the Court exercises supplemental jurisdiction over these claims,

they will have to be dismissed due to the plaintiff's failure to exhaust.

In exercising its discretion under § 1367(c), this Court must consider the issues of "judicial economy, convenience, fairness, and comity." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Sixth Circuit has noted that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 586 (6th Cir. 2005) (quoting *Musson*, 89 F.3d at 1254-55). Indeed, this is the case here, where the principle of comity weighs decidedly in favor of allowing the state law claims to be adjudicated in a state court. States have a paramount interest in determining whether their citizen-inmates have access to state law tort claims against state and local correctional officials. *Cf. Woodford*, 548 U.S. at 94 (noting that "it is 'difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons'" (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 (1973))). Moreover, state courts, not this Court, should decide whether or not exhaustion applies to purely state law causes of action. In light of this interest, it would be more appropriate for the remaining state law claims in this case to be adjudicated in a state forum. Therefore, the Court will dismiss the remaining state law claims without prejudice so that they can be pursued in Kentucky state court.

13

### III. Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

(1)     The defendants' "Motion to File Supplemental Exhibits Regarding Prison Litigation

Reform Act Exhaustion Issue," R. 133, is **GRANTED**.

(2)     The defendants' Motion for Summary Judgment, R. 108, is **GRANTED** in favor of

the defendants with respect to the federal claims asserted against them.

(3)     The remaining state law negligence and gross negligence claims are **DISMISSED**

**WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

(4)     This case shall be **STRICKEN** from the active docket, and all other pending motions

shall be **DENIED AS MOOT**.

This the 29th day of July, 2009.

Signed By:

_Amul R. Thapar_

**United States District Judge**

14